**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

ADAM McCOY, et al.,

      Plaintiffs,

                                   **Case No. 2:10-cv-298**

    v.                            **JUDGE GREGORY L. FROST**

                                   **Magistrate Judge Mark R. Abel**

BOARD OF EDUCATION,
COLUMBUS CITY SCHOOLS, et al.,

      Defendants.

<u>**OPINION AND ORDER**</u>

This matter is before the Court for consideration of the following sets of filings:

(1) a motion for summary judgment (ECF No. 30) filed by Defendants Board of Education Columbus Public Schools, Columbus Local School District, and Superintendent Gene T. Harris ("the School Board Defendants"); a memorandum in opposition (ECF No. 49) filed by Plaintiffs; and a reply memorandum (ECF No. 60) filed by the School Board Defendants;

(2) a motion for summary judgment (ECF No. 33) filed by Defendant Dora Kunz; a memorandum in opposition (ECF No. 48) filed by Plaintiffs; and a reply memorandum (ECF No. 55) filed by the Kunz;

(3) a motion for partial summary judgment (ECF No. 36) filed by Plaintiffs; a memorandum in opposition (ECF No. 42) filed by Kunz; a memorandum in opposition (ECF No. 44) filed by the School Board Defendants; a memorandum in opposition (ECF No. 56) filed by Defendant Gary Stroup; and reply memoranda (ECF Nos. 57, 58, 66) filed by Plaintiffs;

(4) a motion to strike (ECF No. 43) filed by Kunz; a memorandum in opposition (ECF No. 65) filed by Plaintiffs; and a reply memorandum (ECF No. 73) filed by Kunz;

(5) a motion to strike and objections (ECF No. 45) filed by the School Board Defendants;

a memorandum in opposition (ECF No. 67) filed by Plaintiffs; and a reply memorandum (ECF No. 75) filed by the School Board Defendants; and

(6) a motion for reconsideration (ECF No. 78) filed by Plaintiffs and a memorandum in opposition (ECF No. 80) filed by Defendant Kunz.

For the reasons that follow, this Court **DENIES** Plaintiffs' motion for reconsideration (ECF No. 78), **DENIES AS MOOT** Kunz's motion to strike (ECF No. 43), **DENIES AS MOOT** the School Board Defendants' motion to strike and objections (ECF No. 45), **GRANTS** the School Board Defendants' motion for summary judgment (ECF No. 30), **GRANTS** Kunz's motion for summary judgment (ECF No. 33), and **DENIES** Plaintiffs' motion for partial summary judgment (ECF No. 36).

## I.  Background

Plaintiffs Adam and Robin McCoy are the parents of Plaintiff John Doe, a minor.[1] During the 2003-04 school year, Doe attended Winterset Elementary School, a part of the Columbus City Schools District in Columbus, Ohio.  Doe was a student in a Winterset fourth-grade class taught by Defendant Gary Stroup, and Defendant Dora Kunz was previously the Winterset Principal.  Defendant Gene T. Harris was the Columbus City Schools Superintendent, a position she continues to hold.

In 2005, Adam and Robin McCoy learned that Franklin County Children Services were conducting an investigation of Stroup based on allegations that Stroup had engaged in inappropriate physical contact with Doe and other children.  During the course of this

---

[1]  As the Complaint explains, Doe's true name is not used in this litigation to protect him from "unwanted publicity, embarrassment and alienation."  (ECF No. 2 ¶ 1.)

investigation, Stroup was suspended from his teaching duties.  Kunz was placed on leave of absence for an alleged failure to contact the proper authorities about the alleged abuse.  Franklin County Children Services issued a report concluding that the abuse allegations were substantiated, and investigations led to both Stroup and Kunz losing their jobs.  Thereafter, Stroup was criminally charged and entered an *Alford* plea to fifteen counts of gross sexual imposition.

On April 7, 2010, Plaintiffs filed the instant action against the School Board Defendants, Kunz, Stroup, and numerous John Doe teachers and Administrators.  Plaintiffs assert a negligence and/or recklessness claim in Count One, an assault and battery claim in Count Two, a breach of state law statutory duty claim in Count Three, a state law statutory neglect claim in Count Four, a negligent and reckless employment practices claim in Count Five, a negligent and reckless supervision claim in Count Six, a negligent and reckless training claim in Count Seven, a negligent and reckless hiring and retention claim in Count Eight, a negligent entrustment claim in Count Nine, a respondeat superior claim in Count Ten, an intentional infliction of emotional distress claim in Count Eleven, a negligent infliction of emotional distress claim in Count Twelve, a loss of filial consortium claim in Count Thirteen (asserted by only Adam and Robin McCoy), a punitive damages claim in Count Fourteen, a "assertion of fundamental rights under the United States and the Ohio Constitution" claim in Count Fifteen, a 42 U.S.C. § 1983 claim in Count Sixteen, and a Title IX claim under 20 U.S.C. § 1681(a) in Count Seventeen.  (ECF No. 2 ¶¶ 40-126.)

Plaintiffs have filed a motion for partial summary judgment (ECF No. 36), while the School Board Defendants and Kunz have filed motions for summary judgment on all claims

(ECF Nos. 30, 33). Kunz and the School Board Defendants have also filed motions to strike various summary judgment evidence (ECF Nos. 43, 45), while Plaintiffs have filed an objection, styled as a motion for reconsideration (ECF No. 78), to a decision by the Magistrate Judge. The parties have completed briefing on all of these motions, which are now ripe for disposition.

## II. Motion for Reconsideration

In his June 25, 2010 Preliminary Pretrial Order, the Magistrate Judge ordered that "a[]ny . . . motion for leave to amend the pleadings and/or add parties must be filed on or before **September 30, 2010.**" (ECF No. 10, at 1.) Two-hundred and eighty-four days after that deadline to amend had expired, Plaintiffs filed a July 11, 2011 motion for leave to file an amended complaint. (ECF No. 61.) Plaintiffs sought to substitute John Tornes for John Doe Defendant # 1, asserting that discovery had clarified the role Tornes played in the underlying events giving rise to this litigation and supported allegations against Tornes. Tornes is the director of certified personnel at the Columbus City Schools. Plaintiffs assert that Tornes failed to take appropriate disciplinary measures against Stroup and that he failed to warn other school officials about Stroup's alleged inappropriate actions.

The Magistrate Judge denied the motion to amend on August 18, 2011. (ECF No. 77.) Noting that Plaintiffs had been aware of Tornes and his apparent role in the underlying events months before the amendment deadline, that Plaintiffs waited until months after Tornes' deposition to seek leave to amend, and that the parties had already filed summary judgment motions by that point, the Magistrate Judge found a lack of good cause to disturb the case schedule and permit belated amendment.

Plaintiffs object to that decision on the grounds that have shown good cause. They posit

4

that they sought amendment within as soon as they reasonably believed there were grounds for doing so, that the delay between the Tornes deposition and the motion to amend was reasonable, and that judicial efficiency supports amendment as opposed to the filing of a separate lawsuit against Tornes and then attempted consolidation of the related cases.

That Plaintiffs acted with reasonable diligence is a questionable proposition. The record and its history of extensions points to the parties' general lack of fidelity to case deadlines. But perhaps more dispositive of the point is that the inherent uncertainty regarding what Plaintiffs knew or should have known–or recognized–and when undercuts a persuasive argument that the Magistrate Judge's decision was clearly erroneous. Moreover, evaluating the apparent circumstances as the Magistrate Judge did can hardly be fairly characterized as contrary to law. The same rationale undercuts Plaintiffs' contention that they acted in a timely manner once they knew of the purported importance of Tornes. The Court also notes its rejection of Plaintiffs' fallacious argument that part of the reason for their delay in seeking leave to amend is this Court's fault. Plaintiffs assert that by failing to extend the summary judgment deadlines when extending discovery, this Court made counsel busy because "the parties were not only attempting to complete depositions but also to prepare and respond to motions for summary judgment." (ECF No. 78, at 8.) Litigation can be like that. Sometimes counsel do not always get what they want, and sometimes counsel disrupting case deadlines means that counsel have to be busier than usual. To blame in part this Court for a *three-month* delay in filing a seven-page motion (ECF No. 61) and a proffered complaint (ECF No. 61-1) that contains little new substantive content is not a hallmark of persuasive argumentation.

This leaves as a basis for reconsideration Plaintiffs' judicial efficiency argument.

5

Judicial economy, or efficiency, is of course a valid concern, but it is not always dispositive of an amendment issue. Plaintiffs' suggestion that they could bring a separate action and then move for consolidation does not necessarily weigh in favor of permitting amendment; even the consolidation issue would turn on weighing an interest in judicial economy against the potential for delay in this lawsuit, any resulting risk of confusion, and any prejudice. The Court also recognizes the Magistrate Judge's sound reasoning against amendment:

> That Defendants made certain arguments on summary judgment which prompted Plaintiffs to reconsider the structure of their complaint is not sufficient reason to grant so belated a request, to expose Defendants or Mr. Tornes to the resulting prejudice, or to provoke a substantial disruption to the case schedule.

(ECF No. 77, at 4.) There are arguments on both sides as to whether avoiding the filing of another action via amendment promote efficiency. That the issue is so debatable (to the extent it does not outright weigh against Plaintiffs) hardly presents clear error on the part of the Magistrate Judge or a decision that is contrary to law. And as Plaintiffs note, they can still file a separate action, which only serves to undercut the notion that justice requires amendment here.

There has been at best unnecessary delay by Plaintiffs in recognizing and acting upon the asserted importance of Tornes. Neither the interests of judicial efficiency nor justice warrant disrupting the instant litigation once again to permit joining an individual against whom Plaintiffs can perhaps seek relief in a separate action. The Magistrate Judge's decision was therefore neither clearly erroneous nor contrary to law. Accordingly, this Court **DENIES** the motion for reconsideration. (ECF No. 78.)

### III. Motions to Strike

In her motion to strike, Kunz asks this Court to strike two exhibits offered by Plaintiffs related to the Ohio State Board of Education proceedings that resulted in the revocation of her

6

license. (ECF No. 43.) She posits that the exhibits are inadmissible, lack authentication and foundation, and are impermissibly prejudicial so as to outweigh any probative value. In their motion to strike, the School Board Defendants seek "to strike all testimony for which objections appear throughout the two (2) deposition transcripts of Dr. Harris." (ECF No. 45, at 3.) The Court recognizes that the School Board Defendants include by incorporation numerous parts of Harris' deposition that the parties do not reference in their summary judgment briefing on the grounds that this Court might seek to review the content. Such wholesale incorporation of objections without presenting each specific argument targeting actual relied-upon content is not only unusual, but essentially unpersuasive. It also likely violates the Local Civil Rules, which require a party to make its arguments in its briefing and with supporting authority. *See* S. D. Ohio Civ. R. 7.2(a)(1) ("All Motions and applications tendered for filing shall be accompanied by a memorandum in support thereof which shall be a brief statement of the grounds, with citation of authorities relied upon.").

This Court need not and does not decide each motion because, even considering the targeted content in its summary judgment analysis, the Court concludes that none of the disputed material effectuates an outcome adverse to the party seeking to strike the evidence. In other words, the motion to strike briefing has been much ado about nothing. The Court therefore **DENIES AS MOOT** the motions to strike. (ECF Nos. 43, 45.)

### IV.  Summary Judgment Motions

#### A.  Standard Involved

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party

who has the burden of proof at trial fails to make a showing sufficient to establish the existence

of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United*

*Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the

nonmoving party, which must set forth specific facts showing that there is a genuine issue of

material fact for trial.  *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A

genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*,

477 U.S. at 251-52).

## B.  Analysis

The School Board Defendants first move for summary judgment on all of the negligence

claims asserted against them–Counts One, Five, Six, Seven, Eight, Nine, Ten, and Twelve–on

the grounds of political subdivision immunity.  The definition of a "political subdivision" in

Ohio Revised Code § 2744.01(F) includes a school district, and the provision of a system of

public education is a governmental function under § 2744.01(C)(2)(c).  Consequently, the school

district has immunity from liability under Ohio Revised Code Chapter § 2744 unless the events

8

here fall within one of the exceptions set forth in Ohio Revised Code § 2744.02(B).  The School Board Defendants assert that none of the statutory exceptions apply here, and Plaintiffs curiously do not present specific argument, much less direct this Court to evidence in the record, targeting these exceptions.  The mere pleading of recklessness is insufficient to survive summary judgment.  The School Board Defendants are therefore entitled to judgment as a matter of law on Counts One, Five, Six, Seven, Eight, Nine, Ten, and Twelve.

These same defendants also seek summary judgment on Counts Three and Four, which respectively assert claims for breach of state law statutory duty and state law statutory neglect. The School Board Defendants posit that because the claims involved arose between April 2003 and April 2009, § 2744.03(B)(5) immunity exists.  This is so because Ohio Revised Code § 2151.421(M), which presents an exception to such immunity, does not have a retroactive effect to reach the events here.  *See Roe v. Planned Parenthood S.W. Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61.  In addition to making an unpersuasive attempt at distinguishing authority that supports the School Board Defendants' correct reading of the statutory scheme, Plaintiffs present a public policy argument against application of immunity under such circumstances.  Such public policy decisions are within the purview of the Ohio General Assembly and not this Court.  Moreover, although Plaintiffs argue that the cumulative effect of pre-April 2003 failures to report allegations regarding other students than Doe led to the asserted harm to Doe, such an approach contravenes the scope of the controlling statutory scheme in place.  The School Board Defendants are thus also entitled to summary judgment on Counts Three and Four.

The foregoing reliance on Ohio Revised Code Chapter 2744 immunity leads into

9

Plaintiffs' Count Fifteen, a claim in which Plaintiffs assert that the statutory scheme is unconstitutional. The School Board Defendants correctly point out that because the constitutionality of this statutory immunity is well settled, they are entitled to judgment as a matter of law on Count Fifteen. *See Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 697-98 (6th Cir. 2006); *Y.S. v. Bd. of Educ. Local Sch. Dist.*, 766 F. Supp. 2d 839, 843 (N.D. Ohio 2011).

Kunz follows the School Board Defendants' lead in asserting statutory immunity to the state law claims described above. She argues that under the law in effect at the times involved, she also falls within the scope of statutory immunity. Kunz is correct.

There is no debate that Kunz was acting within the scope of her employment and official responsibilities, even if the parties debate her effectiveness. Accordingly, the Ohio Revised Code § 2744.03(A)(6)(a) exception to immunity does not apply here.

There is also no reasonable debate over whether the standard for reporting in 2002 under former Ohio Revised Code § 2151.421 was whether Kunz subjectively knew or suspected abuse, even if the parties disagree as to the veracity of her asserted beliefs. As discussed more fully below, Kunz neither had knowledge of abuse by Stroup or suspected such abuse. Absent such conditions, there was no statutory duty to report and no consequent express imposition of liability under Ohio Revised Code § 2744.03(A)(6)(c). Kunz's failure to report abuse in 2002 therefore does not establish liability for the subsequent purported abuse of Doe.

There is also a dearth of evidence to support Plaintiffs' suggested inferences that Kunz conducted a weak or sham investigation to tilt the scales in favor of Stroup. The investigation was reported to Tornes, who, unlike Kunz, had knowledge of prior allegations involving Stroup,

10

and Tornes also did not report.  To ascribe to Kunz an intent to cover for Stroup without any

concrete evidence suggesting such intent is impermissible.  Although Plaintiffs point to

testimony in the administrative hearing record of Kunz–the admissibility of which the parties

debate–that suggests she and Stroup enjoyed some form of friendship, there is little information

on the issue so as to support a reasonable inference of a malicious purpose or bad faith on the

part of Kunz, which would be necessary to impose liability under Ohio Revised Code §

2744.03(A)(6)(b).

        This leaves only the issue of whether Kunz acted in a wanton or reckless manner, which

could impose liability under the remaining component of Ohio Revised Code §

2744.03(A)(6)(b).  Under Ohio law, " '[a] person acts wantonly if that person acts with a

complete failure to exercise any care whatsoever.' "  *Pritchard v. Hamilton Twp. Bd. of Trustees*,

424 F. App'x 492, 509 (6th Cir. 2011) (quoting *Spears v. Akron Police Dep't*, No. 2487, 2010

WL 625822, at *4 (Ohio Ct. App. Feb. 25, 2010).  No reasonable juror could conclude that Kunz

failed to exercise any care whatsoever.

        Perhaps a closer call is whether Kunz acted in a reckless manner.  The Sixth Circuit has

explained that " ' '[r]eckless" conduct refers to an act done with knowledge or reason to know

of facts that would lead a reasonable person to believe that the conduct creates an unnecessary

risk of physical harm and that this risk is greater than that necessary to make the conduct

negligent.' "  *Sabo v. City of Mentor*, No. 10-4358, 2011 WL 4011448, at *3 (6th Cir. Sept. 12,

2011) (quoting *Shalkhauser v. City of Medina,* 148 Ohio App.3d 41, 50, 772 N.E.2d 129, 136

(2002)).  *See also Pritchard*, 424 F. App'x at 509 ("One acts recklessly if one is aware that one's

conduct creates an unreasonable risk of physical harm to another[.]  Recklessness is more than

11

mere negligence in that the person must be conscious that his [or her] conduct will in all probability result in injury." (quoting *Spears*, 2010 WL 625822, at *4)).  Whether a person has acted in a reckless manner is almost always for a jury to decide.  *Sabo*, 2011 WL 4011448, at *3.

Kunz posits that given the absence of a dispute of material fact as to what she knew and when, as well as to what she did in regard to the 2002 incident (and its re-emergence later that school year), the circumstances here nonetheless entitle her to summary judgment.  This Court agrees.  Hindsight and the license revocation proceedings may cast the 2002 events in a different light, but considering only what Kunz knew and did during the period in question, no reasonable juror could conclude that her actions were done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct created an unnecessary risk of harm.  Kunz may or may not have been negligent, but she was not as a matter of law reckless.  The Court therefore finds her motion for summary judgment well taken on the foregoing state law claims.

Count Thirteen is a state law loss of consortium claim.  The School Board Defendants argue that because Doe has failed to state a cognizable claim against them, this derivative loss of consortium claim necessarily fails.  They also assert, less persuasively, that there has been no change in Doe's relationship with his parents.  This Court grants summary judgment in the School Board Defendants' favor only because the underlying tort claims against them have failed.  *See Wilson v. Columbus Bd. of Educ.*, 589 F. Supp. 2d 952, 972 (S.D. Ohio 2008).  This same analysis extends to Kunz, whose immunity also shields her from liability here.

Defendants Harris and Kunz similarly move for summary judgment on Count Fourteen, which presents a state law claim for punitive damages against them and Stroup.  The Court notes

12

that, given the pleading, this claim incorporates only the preceding thirteen state law claims; it does not reach the subsequently asserted federal claims, although given the failure of all of the claims against the School Board Defendants and Kunz, the punitive damages pleading limitation is ultimately a technicality.  No party presents much extended argument in regard to Count Fourteen, although Harris asserts that because "there exists no evidence whatsoever that [she] was at any time acting outside the scope of her employment, in a reckless, willful, bad faith manner," she is entitled to summary judgment.  (ECF No. 30, at 10.)  Given the failure of Plaintiffs' underlying state law claims against Harris and Kunz, they are entitled to judgment as a matter of law on the related state law claim for punitive damages as well.

Plaintiffs seek partial summary judgment on the two remaining claims in this litigation, both of which are federal claims.  The School Board Defendants also move for summary judgment on Count Sixteen, a § 1983 claim.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, in order to prevail on a § 1983 claim, Plaintiffs must show that, while acting under color of state law, Defendants deprived them of a right secured by the Federal Constitution or laws of the United States.  *See Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003).

Plaintiffs argue that Harris, Kunz, and Stroup violated Doe's substantive due process right to be free from assault and inappropriate touching or molestation and that the state actors breached their duty to report the alleged harassment.  Plaintiffs appear to sue these individuals in

13

their official and individual capacities.

Harris argues that she is entitled to summary judgment on this claim to the extent Plaintiffs rely on incidents from 1999-2000 and 2002-2003 because she was not the Superintendent during the first period and was not involved with the incidents from either set of years in any capacity.  She also asserts that in addition to her acting appropriately in regard to the Doe investigation, thereby negating any claim of deliberate indifference, she is entitled to qualified immunity.

The doctrine of qualified immunity operates under certain circumstances to shield from civil liability governmental officials, such as police officers, who are performing official duties. *Sinick v. Summit*, 76 F. App'x 675, 679 (6th Cir. 2003).  The affirmative defense is meant to safeguard an official's proper decision-making process and offers that party potential relief from frivolous suits.  *See D'Agastino v. Warren*, 75 F. App'x 990, 993 (6th Cir. 2003).

The Sixth Circuit has explained that qualified immunity "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In addition to shielding officials from liability, qualified immunity may entitle the official not to stand trial or face the other burdens of litigation.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The Supreme Court has instructed lower courts to use a distinct analysis to determine whether the application of qualified immunity is warranted.  In addressing the potential applicability of qualified immunity, courts therefore traditionally followed a sequential inquiry: "First, the court considers whether, on the plaintiff's facts, there has there been a violation.

14

Second, the court considers whether that violation involved 'clearly established constitutional rights of which a reasonable person would have known.' " *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)); *see also Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008). This analytic approach has at times also been characterized by various appellate panels as a three-part inquiry in which a court must ask:

> 1) has a constitutional violation occurred; 2) was that right a clearly established right of which a reasonable person would have known; and 3) has the plaintiff alleged sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights?

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc). *See also Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008) (restating test); *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991) ("A public official is entitled to qualified immunity for conduct in performing discretionary functions so long as that conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known."). Other appellate panels have found the third step to be redundant, at least in excessive force cases. *Kijowski v. City of Niles,* 372 F. App'x 595, 598 n.7 (6th Cir. 2010). Regardless of this latter point, courts have relatively recently been permitted to depart from the sequential analysis and address either prong of the two-part qualified immunity inquiry first. *Williams v. Ingham*, 373 F. App'x 542, 547 (6th Cir. 2010); *Kijowski,* 372 F. App'x at 598.

It is also important to note that the doctrine of qualified immunity recognizes that an official can be found to have violated the constitution, but still be granted immunity for *reasonable* mistakes as to the legality of his or her action. *Saucier v. Katz,* 533 U.S. 194, 206 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). The

15

reasonableness of such mistakes is inherently dependant upon the clarity of the legal constraints governing the particular conduct involved.  The contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right.  *Id.* at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In determining whether a defendant is entitled to qualified immunity, "[t]he ultimate burden of proof is on [the plaintiffs] to show that [the defendant is] not entitled to qualified immunity."  *Wegener*, 933 F.2d at 392.  *See also Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992).  Further, "[w]hen ruling on qualified immunity, the district court should indicate the clearly established right at issue and the factual basis for its conclusion that a genuine issue exists as to the commission of acts violating that right."  *Wegener,* 933 F.2d at 392 (citing *Poe v. Haydon*, 853 F.2d 418, 423–24, 426 (6th Cir. 1988)).

It is well settled that

a schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee.  The substantive component of the Due Process Clause protects students against abusive governmental power as exercised by a school.

*Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495, 506 (6th Cir. 1996).  To prevail on a theory that governmental "inaction" caused such a constitutional violation, a plaintiff such as Doe must prove

(1) the existence of a clear and persistent pattern of sexual abuse by school employees;
(2) notice or constructive notice on the part of the School Board;

(3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and

(4) that the School Board's custom was the "moving force" or direct causal link in the constitutional deprivation.

16

*Id.* at 508.  Here, Plaintiffs' theory is that Harris acted in her official capacity pursuant to such a policy or custom, a practice that influenced Tornes' role in the events.  Additionally, as the Sixth Circuit has explained:

> The evidence must show that the need to act is so obvious that [a defendant's] "conscious" decision not to act can be said to amount to a "policy" of deliberate indifference to Doe's constitutional rights.  "Deliberate indifference" in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse.

*Id.*  Plaintiffs have failed to meet this standard, given that they have not pointed to sufficient evidence indicating that what Harris, Tornes, or any other school actor allegedly did was objectively unreasonable in light of the clearly established constitutional right involved.

Plaintiffs' briefing in regard to this federal claim, much like their pleading of Count Sixteen, is arguably less helpful than would be hoped.  Rather than directing this Court to specific evidence and relating it to the particular legal tests involved, Plaintiffs largely adopt a narrative argument (most notably in their memorandum in opposition) that is perhaps more appropriate for a closing statement to the jury than summary judgment briefing.  Despite this issue, the Court has endeavored to match Plaintiffs' argument with the law and has found Plaintiffs' claim wanting.

Plaintiffs pursue the § 1983 claim against Harris (and by extension, the school district) by criticizing her deposition responses, questioning her actions, and characterizing her purported flaws as evincing a school custom or policy responsible for the events that befell Doe.  But Plaintiffs often rely on speculation in this attempt to bolster their case, stacking inference on inference to assert that there may have been other unreported or undocumented abuse and that the School Board Defendants may failed to investigate Stroup's references because there may

17

have been a similar incident related to his volunteering with the Boy Scouts of America.  Such impermissible speculation does not equate to summary judgment evidence presenting a genuine issue of material fact in regard to the first two factors noted above.  Moreover, although Plaintiffs are correct that Harris' deposition testimony hardly presents a model of clarity or at times perhaps even coherence, there is no evidence that her "context is everything" position is tantamount to a custom or policy of deliberate indifference.  Even negligent conduct or foolish or nervous deposition waffling is not actionable under § 1983 in the absence of a custom or policy.  *See id.* at 509.  Thus, "[a]lthough the facts of this case are tragic and [the Court is] deeply disturbed by [the purported] sexual abuse of Doe, the limitations of our judicial authority do not permit [this Court] to provide the relief Doe seeks" in regard to the School Board Defendants.  *Id.* at 510.  There is no underlying school district custom or policy of deliberate indifference behind the actions of Harris, Kunz, or Tornes.

To the extent that Plaintiffs assert the § 1983 claim against Harris in her individual capacity as well as her official capacity, the Court must conclude that this component of Plaintiffs' claims also fails.  *See id.* at 513 (applying supervisory liability standards to sufficiently analogous claim against a superintendent).  To paraphrase the analysis by the Sixth Circuit in *Doe*, Harris was simply not confronted with such a widespread pattern of constitutional violations that her actions or inactions amounted to a deliberate indifference to the danger of Stroup abusing Doe or other students.  The steps Harris did  take, and even those she may have  failed to take and arguably should have taken, do not show that she encouraged the specific incident of misconduct or in some other way directly participated in it.  Nor did Harris authorize, approve, or knowingly acquiesce in any unconstitutional conduct by Stroup.  Harris

18

had no knowledge, constructive or otherwise, that Stroup was abusing Doe to create § 1983 liability.

Similar to Harris, Kunz also seeks summary judgment on Plaintiffs' § 1983 claim. Plaintiffs in turn move for summary judgment against Kunz. Key to the analysis of this claim is the role Kuntz played in regard to a 2002 incident involving Stroup. In November 2002, Kunz had received a complaint about Stroup having had placed his hand on a child's upper thigh. Kunz met with the mother of the child involved and learned that, having knelt down on one knee to help the child at his desk, Stroup put his hand on the upper leg of the child to steady himself as Stroup stood up. Kunz spoke with nearby students who did not report anything odd. She also met with Stroup, who in turn met with both of the child's parents. Ultimately, the parents were satisfied with the inquiry and the child remained in the classroom. Although Kunz filed an incident report with the personnel office and counseled Stroup not to touch students, she did not issue a disciplinary letter and did not report the incident to Franklin County Children Services because she purportedly did not consider the incident to be abuse and did not suspect Stroup of abusing students. Kunz did speak with Tornes, who allegedly indicated that if she did not suspect abuse, then Kunz did not have to do anything else. At no time in this process was Kunz aware that Stroup had prior complaints against him of inappropriate touching. The Court also notes that Kunz did not work at Winterset Elementary School when the actual alleged abuse of Doe occurred, and Kunz apparently did not inform the new principal of the prior incident involving Stroup upon her transfer to another school.

Kunz argues that because her conduct in regard to the November 2002 incident investigation involved discretionary functions, she is entitled to qualified immunity and Plaintiffs

cannot establish that she breached a constitutional right belonging to Doe.  Plaintiffs in contrast assert that they are entitled to summary judgment because Kunz's conduct was part of a widespread pattern of deliberate indifference toward Stroup's actions and because her failure to sufficiently document and report the 2002 incident "directly led to and enabled" Stroup's asserted inappropriate conduct toward Doe.  (ECF No. 48, at 1.)

Despite Plaintiffs' argument, there was no pattern of abuse or notable indication of a risk of abuse here.  Moreover, the fact that Plaintiffs may disagree with the conclusions Kunz reached as a result of her investigation or the fact that she could have conducted that investigation differently does not mean that Kunz acted with deliberate indifference or that the investigation was the sham Plaintiffs assert.  Even assuming *arguendo* that Kunz's 2002-related actions were indeed sloppy, reckless, or neglectful, the law does not impose § 1983 liability for such conduct where, as here, Stroup simply did not present a strong likelihood of abuse based on the information known.  *See Doe*, 103 F.3d at 513 ("A plaintiff must show that, in light of the information the defendants possessed, the teacher who engaged in sexual abuse 'showed a strong likelihood that he would attempt to' sexually abuse other students, such that the 'failure to take adequate precautions amounted to deliberate indifference' to the constitutional rights of students." (quoting *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992))).  The information known was the result of a reasonable investigation.

Kunz may or may not have been partially or wholly ineffective or even less than ideally competent in conducting that investigation and drawing conclusions, but neither the process employed nor the conclusions reached were unreasonable.  She may indeed have fallen below the standard of professionalism necessary to retain her license.  The license issue is a separate

20

inquiry with its own standard, however, regardless of how much Plaintiffs seek to give those proceedings dispositive weight here. Under the standard relevant in this action on this federal claim, no reasonable juror could conclude that Kunz's conduct "amounted to a tacit authorization of the abuse." *Id.* If Kunz was mistaken in her actions, her error was reasonable insofar as immunity is concerned. She is therefore entitled to summary judgment on Count Sixteen and Plaintiffs are not.

This leaves for discussion the sole remaining component of Plaintiffs' § 1983 claim, that aspect of the claim targeting Stroup. Plaintiffs argue that the evidence unquestionably demonstrates that Stroup engaged in sexual contact with Doe. Doe's deposition presents a disturbing account of the events that, if true, would support his claim. Stroup concedes that he touched Doe, but denies that he did so in a sexual or inappropriate way. Additionally, Stroup filed with the Court's permission a belated affidavit in which he denies any inappropriate contact with any students at any time. (ECF No. 63.) This leads to the issue of Stroup's *Alford* plea and whether he is collaterally estopped from denying the conduct of which he is accused in this subsequent civil proceeding.

Plaintiff contend that Stroup's *Alford* plea is "tantamount to an admission of factual guilt" and that it removes any genuine issue of material fact regardless of his denials. (ECF No. 36, at 11-12; ECF No. 66, at 2.) Stroup counters that under Ohio law, an *Alford* plea is not an admission of guilt, which means that he is not foreclosed from asserting his innocence here and presenting an genuine issue of material fact.

Ohio case law provides that

> [a] plea made pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct.

> 160, 27 L.Ed.2d 162, is a type of guilty plea in which a defendant pleads guilty while
> maintaining innocence. *State v. Ware*, 6th Dist. No. L–08–1050, 2008-Ohio-6944,
> 2008 WL 5412393, ¶ 11; *State v. Hopkins,* 6th Dist. No. L–05–1012, 2006-Ohio-967,
> 2006 WL 513956, ¶ 14. There is no "express admission of guilt" in an *Alford* plea.
> *Alford* at 37.

*State v. Gonzalez*, 193 Ohio App. 3d 385, 2011-Ohio-1542, ¶59, 952 N.E.2d 502 (Ohio App. 6th

Dist. 2011). Another Ohio court of appeals has similarly explained that "[a]n '*Alford* plea' is a

specialized type of guilty plea where the defendant, although pleading guilty, continues to deny

his or her guilt but enters the plea because the defendant believes that the offered sentence is

better than what the outcome of a trial is likely to be." *State v. Schmidt*, No. 10-10-04, 2010 WL

3836161, at *3 (Ohio App. 3d Dist. Oct. 4, 2010). Plaintiffs' reply memorandum presentation of

authority to support the asserted effect of the *Alford* plea presents no binding case directly on

point, but does point to non-binding case law in which courts have treated an *Alford* plea as

having the same preclusive effect as a guilty plea.

The problem with cases supporting Plaintiffs' position is that they fail to credit the case

law of Ohio on *Alford* pleas. For example, the Eleventh Circuit has specifically addressed and

disagreed with "a case in which the Ohio Court of Appeals determined that a defendant's

previous *Alford* plea to arson was tantamount to a plea of *nolo contendere,* thus precluding

collateral estoppel in a subsequent civil action." *Blohm v. C.I.R.*, 994 F.2d 1542 (11th Cir. 1993)

(discussing *Fleck v. State Farm Ins. Co.*, No. 89-L-14-070, 1990 WL 124648 (Ohio Ct. App.

Aug. 24, 1990)). *Fleck* and its holding that an *Alford* plea does not operate to foreclose

subsequent civil litigation on a factual issue pre-date Stroup's *Alford* plea, so that Ohio case law

told individuals such as Stroup at the time of his *Alford* plea that there is no collateral civil

consequence of the sort at issue here. Given the lack of controlling federal authority to the

contrary, this Court therefore declines to give Stroup's *Alford* plea dispositive weight in the instant context.  The Court recognizes that the consequent genuine dispute of material fact likely necessitates the presentation of evidence at trial as to what Stroup did or did not do, leaving the issue for the jury.  Plaintiffs characterize such a result in their briefing as unnecessary, but assert their willingness to proceed if needed.  The Court declines to grant summary judgment in favor of Plaintiffs and against Stroup on the § 1983 claim.

In the last remaining claim, Count Seventeen, Plaintiffs assert a Title IX claim against Defendants Board of Education Columbus Public Schools/Columbus Local School District. Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  It is settled law that "[t]his includes the duty not to discriminate on the basis of sex, which encompasses a teacher's sexual harassment of a student."  *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 366 (6th Cir. 2005) (citing *Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274, 282 (1998)).  In order to prevail on this claim, Plaintiffs must prove that "the school district had actual notice and exhibited deliberate indifference to the alleged harassment."  *Id.* at 366 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998)).  Such "deliberate indifference of a school district is shown where there is an official or other person with authority to take corrective action, who has 'actual knowledge of [the abuse], and fails adequately to respond.' " *Id.* (quoting *Gebser*, 524 U.S. at 290).

Incorporating their § 1983 argument, Plaintiffs seek summary judgment on Title IX the same facts they asserted for that failed claim.  Defendants Board of Education Columbus Public

Schools/Columbus Local School District argue that there is absolutely no evidence that Stroup has engaged in sexual abuse prior to the Doe allegations or that any defendant knew of the abuse. Plaintiffs do not respond to this argument directly in their memorandum in opposition, and there is no apparent evidence before the Court suggesting that Defendants Board of Education Columbus Public Schools/Columbus Local School District had the requisite knowledge or acted unreasonably to incur liability here. Plaintiffs are therefore not entitled to summary judgment, while Defendants Board of Education Columbus Public Schools/Columbus Local School District are entitled to judgment as a matter of law on the Title IX claim.

Kunz also seeks summary judgment on the Title IX claim. Given the state of the Complaint, it is unclear whether Plaintiffs intended to assert this claim against Kunz (or any other individual defendant). Assuming that Plaintiffs indeed sought to assert such a claim against Kunz, the Court concludes that Kunz is entitled to summary judgment on Count Seventeen. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (explaining that "Title IX . . . has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals"). *See also Marcum ex rel. C.V. v. Bd. of Educ. of Bloom-Carroll Local Sch. Dist.*, 727 F. Supp. 2d 657, 667 (S.D. Ohio 2010).

## V.  Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for reconsideration (ECF No. 78), **DENIES AS MOOT** Kunz's motion to strike (ECF No. 43), **DENIES AS MOOT** the School Board Defendants' motion to strike and objections (ECF No. 45), **GRANTS** the School Board Defendants' motion for summary judgment (ECF No. 30), **GRANTS** Kunz's motion for summary judgment (ECF No. 33), and **DENIES** Plaintiffs' motion for partial

24

summary judgment (ECF No. 36).  The claims against Stroup remain pending.

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____

GREGORY L. FROST

UNITED STATES DISTRICT JUDGE
